UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ANGELA MICHELLA BAUGHER, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 1:19-cv-00110 SRC |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

**Memorandum and Order**

This matter comes before the Court on Plaintiff Angela Baugher's request for judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying Baugher's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. and 42 U.S.C. §§ 1381, *et seq*.  The Court affirms the Commissioner's decision.

**I.      Procedural history**

Baugher filed her application for benefits December 18, 2015.  Tr. 280-81.  The Social Security Administration initially denied her application on March 22, 2016.  Tr. 284.  Baugher asked for a hearing before an ALJ on May 3, 2016, and the ALJ held a hearing on January 24, 2018.  Tr. 226, 291.  The ALJ denied Baugher's application in a decision dated July 13, 2018.  Tr. 208-220.  On May 20, 2019, the Appeals Council denied Baugher's request for review.  Tr. 1-3.  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.     Decision of the ALJ

The ALJ determined that Baugher has not engaged in substantial gainful activity since April 15, 2014, the alleged onset date. Tr. 213.  The ALJ found Baugher has severe impairments of plantar fasciitis and an autoimmune or similar disorder alternatively diagnosed as lupus, fibromyalgia, polymyalgia rheumatic, or Graves disease.  Tr. 213.  The ALJ found Baugher's alleged impairment of celiac disease to be non-severe and that she did not have a severe medically-determinable mental impairment.  Tr. 214.  The ALJ found that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 215.  After considering the entire record, the ALJ determined that Baugher had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) with the following limitations.  Tr. 215.  She cannot climb ladders, ropes, and scaffolds.  *Id*.  She can occasionally climb stairs and ramps and occasionally stoop, kneel, crouch, and crawl.  *Id*.  She cannot perform work that involves the operation of foot controls.  *Id*.  She is limited to work involving simple, routine tasks and simple work-related decisions.  *Id*.

The ALJ found Baugher is unable to perform any past relevant work.  Tr. 219.  Baugher was 39 years old on the date she filed the application which is defined as a "younger individual age 18-44."  Tr. 219.  Baugher has at least a high school education and is able to communicate in English.  *Id*.  After considering Baugher's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that Baugher can perform including patcher, final assembler, and document preparer.  Tr. 219-20.  Thus, the ALJ concluded that Baugher "has not been under a disability."  Tr. 220.  Baugher appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

**III.     Legal standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively

3

disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*,

674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision.  42 U.S.C. §§ 405(g); 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Id.*  Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016).  The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.*  The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

**IV.   Discussion**

As noted above, the ALJ determined that Baugher retained the RFC to perform limited sedentary work, and that Baugher's physical and mental impairments would not preclude her from performing work that exists in significant numbers in the national economy.  Substantial evidence supports the ALJ's decision.

5

### A. The ALJ appropriately discounted Baugher's subjective complaints.

At her hearing before the ALJ, Baugher testified extensively about her alleged physical and mental limitations. She testified that she was unable to keep up with what an employer expects due to pain and fatigue, and problems with memory and concentration. Tr. at 241. She testified that she had trouble staying on her feet and further testified that she could only sit for one hour. *Id.* at 242. She described pain, fatigue, and joint stiffness. *Id.* at 245. Baugher testified that she could not squat down and pick up anything. *Id.* at 246-47. She testified that she had a "mental fog" with memory problems and further testified that her medications contributed to her dizziness and fatigue. *Id.* at 245, 250.

The ALJ did not entirely credit Baugher's testimony, finding that her "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. at 216. An ALJ must begin his assessment of a claimant's RFC with an evaluation of the credibility of the claimant and assessing the claimant's credibility is primarily the ALJ's function. *See Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003) (finding a claimant's credibility is primarily a matter for the ALJ to decide); *see also Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."). The ALJ may discount the claimant's subjective complaints "if there are inconsistencies in the evidence as a whole." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). Here, the ALJ properly discounted Baugher's subjective complaints based on inconsistencies in the record.

First, the ALJ noted inconsistencies between Baugher's subjective complaints and her own statements. When asked by the ALJ about her daily routine, Baugher testified that she

6

cooked some meals and did laundry for her son. Tr. at 248; 426. She stated that she did light cleaning, including vacuuming and washing dishes. *Id.* at 427. Baugher indicated that she was able to drive a car and shop in stores. *Id.* at 428. In February 2017, Baugher told an examiner that she rode her bicycle a few times per week. *Id.* at 1018. In December 2017, Baugher described how she took care of her elderly parents. *Id.* at 977. Baugher indicated that she was able to pay bills, handle a savings account, and use a checkbook. *Id.* at 428. The ALJ determined that "[t]hese activities belie a finding that [Baugher] is as limited physically and mentally as she alleged." *Id.* at 216.

Additionally, the ALJ noted inconsistencies between Baugher's subjective complaints and her medical records, noting that "[t]he medical evidence fails to support a finding that [Baugher] is as limited as she alleged." *Id.* at 216. Regarding Baugher's problems with her feet, the ALJ noted that Baugher told a treater in April of 2014 that she was experiencing heel pain for four weeks. *Id.* at 774. Later the same month she told a different physician that she had had heel pain for over a year. *Id.* at 804. Examination revealed tenderness but no acute distress. *Id.* at 804-05. Baugher's physician recommended that she use a nighttime splint and "slowly wean back to normal activity." *Id.* A May 2014 MRI revealed signs of plantar fasciitis. *Id.* at 702-03. The same month, Baugher reported that she was doing better and was not using crutches. *Id.* at 802.

Regarding her joint issues, Baugher began describing joint pain to her treaters in 2015. However, Baugher was negative for musculoskeletal and neurologic symptoms in January 2015. *Id.* at 596. In a September 2015 examination, Baugher's treater found full range of motion in all joints and normal muscle strength. *Id.* at 690. In October 2015, Baugher reported issues with her thumb joints, but her physician again noted full range of motion in all joints and normal

7

strength.  *Id.* at 691, 616.  Lab results showed no clinical evidence of inflammatory arthritis.  *Id.* at 614.  Further examinations throughout 2016 and 2017 continued to show a normal range of motion.  *Id.* at 654, 819, 822, 825, 834, 841, 845, 862, 872, 878, 897, 904, 926, 933, 952, 972.  Despite finding in the medical evidence "very few signs of significant abnormality indicative of [Baugher]'s allegations," the ALJ did acknowledge "sufficient evidence that [Baugher] has medically determinable abnormality of her feet as well as frequently reported autoimmune symptoms."  *Id.* at 218.  The ALJ adjusted Baugher's RFC accordingly, determining that she is limited to sedentary work and cannot perform tasks involving the operation of foot controls.  *Id.* at 215.

Finally, regarding Baugher's alleged mental limitations, the ALJ noted that "no examiner observed signs that [Baugher] could not perform simple, routine tasks and make simple work-related decisions."  *Id.* at 219.  The ALJ gave Baugher the "benefit of the doubt" in finding that she has some mental limitations regarding memory and concentration and adjusted the RFC accordingly.  *Id.* at 219.  Thus, Baugher's RFC "is limited to work involving simple, routine tasks and simple work-related decisions."  *Id.* at 215.

In sum, the ALJ properly considered all record evidence, including the medical records and Baugher's own statements, in determining that Baugher was not "as limited physically and mentally as she alleged."  *Id.* at 216.  The Court finds that substantial evidence supports the ALJ's determination that the record does not support the extent of Baugher's subjective complaints.  *See Flynn v. Astrue*, 513 F.3d 788, 792 (8th Cir. 2008) (standard of review; substantial evidence is enough that reasonable mind might accept it as adequate to support decision); *see also Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (ALJ is in the "best position" to make credibility determinations).

> **B.      Baugher failed to show that the ALJ should have included work absences due to medical treatment in his RFC determination.**

Relying on the testimony of the vocational expert, the ALJ determined that Baugher is not disabled because, given her RFC, "jobs exist in significant numbers in the national economy that [Baugher] can perform." Tr. at 219-20. On appeal, Baugher does not meaningfully challenge the ALJ's assessment of her physical and mental limitations. Baugher's sole argument on appeal is that the ALJ improperly found Baugher capable of maintaining any employment. Baugher argues that her various medical appointments would require her to miss multiple days of work each month, precluding employment.

Baugher relies on testimony from the court-appointed vocational expert, who testified that an employee who misses "at least two days per month on a continuing and ongoing basis" would not be able to maintain employment in the national economy. *Id.* at 256. The vocational expert further testified that "[t]here would be no substantial gainful employment with that absentee rate." *Id.* Baugher argues that her regular physical and mental health treatments would require her to routinely miss work:

> [Baugher] sees [a specialist] for treatment of her lupus at least once every three months. She sees [a psychiatrist for treatment of mood disorder and anxiety disorder] at least once per month. She sees [her primary care physician] at least once every three months. [Baugher] is required to take allergy shots … once per week.

Doc. 12 at 12. Baugher extrapolates from the frequency of these appointments that she would necessarily miss more than two days of work each month:

> She is to see the psychiatrist or other therapist at least once per month. This would cost half a day of work per month. She sees her family doctor at least once every three months. This would cost her one-sixth of a day of work per month. … She also sees [the specialist] at least once every three months. Lastly, the allergy shots will take approximately one-third of a day to take care of that weekly obligation or

9

> at least one and one-third days per month.  *If those fractions are converted to the amount of time per month, they would add up to two and one-sixth days per month*.

*Id.* at 13 (emphasis added).

In response, the Commissioner argues that Baugher "had the burden of proving that her treatment was both necessary and could not be achieved in a manner that would reduce any interference with a work schedule," but failed to meet that burden.  Doc. 15 at 4-5.  The Court agrees.  The claimant bears the burden of proving disability, not the ALJ.  *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (citing 20 C.F.R. § 404.1512).  Baugher points to no evidence in the record supporting her claim that her appointments could not be rescheduled to accommodate a work schedule, e.g., on weekends or in the evening.  In her reply brief, Baugher asserts—without citation to the record—that "[a]ll of the doctors who [Baugher] sees have office schedules and appointments available during the normal [business hours].  None of these doctors have Saturday or Sunday appointments or services available."  Doc. 16 at 6.  Argument is not evidence.  Again, Baugher fails to cite any record evidence showing her treaters' schedules.  *See Lara v. Berryhill*, No. 4:16-CV-00564-PLC, 2018 WL 1744534, at *3 (E.D. Mo. Apr. 11, 2018) ("Nor did Plaintiff cite evidence in the record to suggest that she could not schedule her medical appointments around her work schedule and/or schedule multiple appointments on the same day.").

Regardless, even if Baugher had shown that her current treaters' schedules are as inflexible as she now claims, the Court would still affirm the ALJ's decision.  Baugher's argument depends on at least two flawed premises.  First, Baugher assumes without evidence that no work compatible with her RFC would be available at a different work schedule, e.g., "night shift" work or a schedule with alternative days off.  The vocational expert identified three occupations compatible with her RFC: patcher (34,000 jobs nationally), final assembler (20,000

jobs nationally), and document preparer (25,600 jobs nationally).  Tr. at 220.  Baugher has failed to show that these jobs are exclusively 8:00 to 5:00.

Second, and more importantly, Baugher assumes—incorrectly—that the ALJ was required to find her disabled unless Baugher can find employment compatible with her existing treaters' schedules.  A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in *any other kind of substantial gainful work* which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (emphasis added).  Thus, the statute expressly contemplates that an individual may need to change jobs or even occupations to find compatible work.  Likewise, an individual might have to find new medical treaters if his existing treaters' appointment schedules foreclose all compatible work.  Thus, the ALJ was not required to consider Baugher's existing treaters' schedules in making his disability determination.

### V.     Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  It does not substitute its own judgment for that of the ALJ.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  Having found that substantial evidence supports the ALJ's conclusions and that the ALJ correctly applied the legal standards, this Court affirms the ALJ's decision.

Accordingly, the Court affirms the decision of the Commissioner and dismisses Plaintiff Angela Michella Baugher's Complaint with prejudice.

Dated:  November 25, 2020.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**